Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | William J. Hibbler | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| CASE NUMBER | 00 C 5455 | DATE | 05/04/2001 |
| CASE TITLE | Harris v. Castle Motor Sales, Inc. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

Defendant's Motion to Dismiss (doc. #6)

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing [held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference [held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial [set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs [by/agreement/pursuant to]
    ☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Defendant's Motion to Dismiss (6-1) is DENIED. Defendant to answer the amended complaint by 5/29/01. Status hearing to set scheduling order set for June 13, 2001 at 9:15 a.m.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | |
|---|---|---|
| | No notices required. | number of notices |
| | Notices mailed by judge's staff. | MAY 0 7 2001 date docketed |
| | Notified counsel by telephone. | |
| ✓ | Docketing to mail notices. | docketing deputy initials |
| | Mail AO 450 form. | |
| | Copy to judge/magistrate judge. | MAY 0 7 2001 date mailed notice |
| JHC courtroom deputy's initials | | |
| | Date/time received in central Clerk's Office | mailing deputy initials |

Document Number: 14

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| PATRICIA HARRIS )<br>    Plaintiff, )<br>)<br>v. )<br>)<br>CASTLE MOTOR SALES, INC. )<br>    Defendant. ) | CASE NO. 00C 5455<br><br>JUDGE WILLIAM J. HIBBLER |

## MEMORANDUM AND OPINION

Plaintiff Patricia Harris ("Plaintiff") filed an amended complaint against Defendant Castle Motor Sales, Inc. ("Defendant") arising out of Plaintiff's alleged trade-in of her 1995 Oldsmobile toward the purchase of a 1996 Honda Civic. Plaintiff alleges violations of the Truth-in-Lending Act ("TILA"), 15 U.S.C. § 1602 *et seq.* (Count I); the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"), 815 ILCS 505/2 *et seq.* (Count II); common law fraud under Illinois law (Count III); and the Credit Services Organizations Act ("CSOA"), 815 ILCS 605/1 *et seq.* (Count IV). Defendant filed the present motion to dismiss all counts, pursuant to Federal Rule of Civil Procedure 12(b)(6) (doc. #6). For the reasons noted herein, Defendant's motion is **DENIED**.

## MOTION TO DISMISS STANDARD

A motion to dismiss under Rule 12(b)(6) should test the sufficiency of the complaint rather than address the merits of the case. This Court must construe all allegations in the complaint in a light most favorable to the plaintiff, taking all well-pleaded facts and allegations within the complaint as true. *Bontkowski v. First Nat. Bank of Cicero*, 998 F.2d 459, 461 (7th Cir. 1993). Because Plaintiff's allegations are taken as true, Defendant must meet a high standard in order to have the complaint dismissed for failure to state a claim upon which relief may be granted. The allegations of a complaint should not be dismissed for failure to state a claim "unless it appears beyond a doubt that the plaintiff can prove no set of facts in



support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); *Hartford Fire Insurance Co. v. California*, 509 U.S. 764 (1993); *Sherwin Manor Nursing Center, Inc. v. McAuliffe*, 37 F.3d 1216, 1219 (7th Cir.1994). This Court must construe the present pleadings liberally in compliance with the notice pleading provision of the federal rules. *Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit*, 507 U.S. 163, 168 (1993). However, this Court need not stretch the allegations beyond their sensible and reasonable implications. *Chan v. City of Chicago*, 777 F.Supp. 1437, 1440 (N.D.Ill.1991).

In reviewing a Rule 12(b)(6) motion to dismiss for failure to state a claim, this court's review is limited to the allegations contained in the pleadings themselves. However, documents incorporated by reference or attached to the pleadings as exhibits are considered part of the pleadings for all intents and purposes. Fed. R. Civ. P. 10(c). In addition, "documents that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to her claim." *Venture Associates Corp. v. Zenith Data Systems Corp.*, 987 F.2d 429, 431 (7th Cir. 1993). Here, Plaintiff did not refer to Defendant's affidavits, and thus Defendant's additional facts are not considered at this stage.

## FACTS AND BACKGROUND

On April 17, 2000, Plaintiff traveled to Defendant's automobile dealership and expressed an interest in refinancing her credit on her 1995 Oldsmobile, previously purchased from Defendant. In addition to discussing her refinancing options with Defendant, Plaintiff also discussed trading in her Oldsmobile and purchasing a 1996 Honda Civic. Plaintiff maintains she signed a blank buyers order and retail installment contract, took the Civic home that day without binding herself to any agreement and agreed to inform Defendant the next day as to whether she intended to purchase the car.

On April 18, Plaintiff returned to Defendant's dealership. She stated she was not interested in purchasing the Civic and instead wished simply to refinance her outstanding payments on her Oldsmobile.

At that time, Defendant allegedly represented: Plaintiff had signed legally binding contracts for the purchase of the Civic; Plaintiff's Oldsmobile had been sold to a third-party; Defendant would help Plaintiff arrange for and secure an extension of credit from a third party; Defendant would arrange for financing at an annual percentage rate between 16.5 and 16.9%; and Plaintiff was not required to make the outstanding installment payments on her Oldsmobile. In particular, the buyers order stated "[i]f financing cannot be obtained within 5 business days for Purchaser according to the proposals in the retail installment contract executed between Seller and Purchaser, either Seller or Purchaser may cancel the Agreement shown on the face of this Order and the retail installment contract." Plaintiff states she first saw the fully completed and signed buyers order on April 27 and the retail installment contract on May 2, 2000.

Also on April 18, Plaintiff filled out a credit application for the purchase of the Civic. The next day and again in May, third party financing companies rejected Plaintiff's credit applications. On April 27, Plaintiff again requested that Defendant cancel her contract and return her Oldsmobile; she states Defendant refused to do so. Further, Defendant expressed to Plaintiff that: her credit had been approved; Defendant would pay the balance Plaintiff owed on the Oldsmobile to AmeriCredit, the financing agent on her Oldsmobile; and Plaintiff did not have to make further installment payments on the Oldsmobile.

On May 2, Plaintiff alleges she first learned Defendant had completed the contract at an annual percentage rate of 18.95%, instead of the promised 16.5 - 16.9%. On that day, Plaintiff again asked to cancel the contract and Defendant allegedly repeated the representations made on April 27. Plaintiff then hired legal counsel, who sent Defendant a demand letter on May 8; soon after, Defendant returned the Oldsmobile to Plaintiff in damaged condition. In response, Plaintiff filed the present complaint.

## ANALYSIS

### Count I: Truth in Lending Act claim

Congress enacted TILA "to assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of

credit, and to protect the consumer against inaccurate and unfair billing and credit card practices." 15 U.S.C. § 1601(a); *see also Walker v. Wallace Auto Sales Inc.*, 155 F.3d 927, 932 (7th Cir. 1998). In keeping with this purpose, TILA requires creditors to clearly make finance term disclosures under the credit transaction. *See* 15 U.S.C. §1638(a). Despite its broad purpose of protecting consumers from being misled about the cost of credit, TILA "is not a general prohibition of fraud in consumer transactions or even in consumer credit transactions." *Gibson v. Bob Watson Chevrolet-Geo, Inc.*, 112 F.3d 283, 285 (7th Cir. 1997).

Under its authority "to elaborate and expand the legal framework governing commerce in credit" and pursuant to TILA, the Federal Reserve Board implemented governing regulations, commonly known as Regulation Z. *See Ford Motor Credit Co. v. Milhollin*, 444 U.S. 555, 559-60 (1980); 12 C.F.R. § 226 (1999). These regulations mandate the disclosures be made clearly and conspicuously in writing and include, among other things, the amount financed, the finance charge, the annual percentage rate, total of payments, and total sale price. *See* 12 C.F.R. § 226.17(a), 226.18(b)(d)(e)(g)(j).

In Count I, Plaintiff alleges Defendant violated TILA by: causing Plaintiff to sign the retail installment contract in blank; failing to give Plaintiff a copy of this contract prior to consumation; including the service contract charge in the "amount financed" instead of the "finance charge"; misrepresenting the annual percentage rate included in the retail installment contract; imposing a larger documentary fee in the present financing transaction; and artificially inflating the allowance on Plaintiff's trade-in vehicle and increasing the cash price of the car. Plaintiff has alleged a credit sale between herself and Defendant consummated under TILA on April 17, 2000, the date Plaintiff took possession of the Honda Civic and became contractually obligated when she signed the blank retail installment contract. Plaintiff claims this disclosure was inaccurate and invalid under TILA because Defendant caused her to sign a blank retail installment contract and then failed to give her a copy until May 2, i.e. after consummation on April 17. Defendant continually argues the buyers order constitutes a proper written disclosure and thus precludes Plaintiff's arguments because Plaintiff acknowledged the retail installment contract and buyers order could

4

be voided if Defendant failed to secure financing for her. Thus, Defendant claims that its failure to secure financing at the orally stated rate did not violate TILA.

However, this court must accept the allegations set forth in the complaint as true and construe all reasonable inferences in the light most favorable to Plaintiff. *Miree v. DeKalb*, 433 U.S. 25, 27 n. 2 (1977), *Gomez v. Illinois State Bd. of Educ.*, 811 F.2d 1030, 1039 (7th Cir. 1987). For example, in consummating the transaction, Defendant disclosed it would provide Plaintiff with credit of a certain amount, at a certain rate, under certain conditions, but only if it was able to obtain the credit within five days. Plaintiff alleges she was told on two separate occasions by Defendant she had obtained financing and did not have to pay her outstanding payments on the Oldsmobile to AmeriCredit. Thus, there exists a question of whether Defendant provided Plaintiff with clear and accurate disclosures as to the credit terms. *See Williams v. Thomas Pontiac-GMC-Nissan*, No. 99 C 882, 1999 WL 787488, at *2 (N.D.Ill Sept. 24, 1999). Plaintiff relies on Judge Holderman's decision on the cross motions for summary judgment in *Williams v. Thomas Pontiac* to show that a factually similar claim has survived a motion to dismiss; Defendant challenges the applicability of that decision. However, both parties' arguments are misplaced, as they cite to Judge Holderman's summary judgement motion opinion; Plaintiff and Defendant would be better served by comparing and contrasting Judge Holderman's motion to dismiss opinion in that case. The opinions feature significantly different standards of review and the facts are more fully explained in the earlier opinion. *Williams*, No. 99 C 882, 1999 WL 787488 (N.D.Ill. Sep. 24, 1999)(motion to dismiss); No. 99 C 882 (April 11, 2000)(motion for summary judgment).

*Williams* and the present matter share similar facts. Plaintiff Williams signed an agreement and took possession of an automobile. Defendant dealership was unable to obtain financing under the stated terms, but it had inaccurately informed Williams her financing had been approved. Further, the provision in Williams' contract stated the dealership must notify her of a failure to obtain financing within three days, but the dealership took longer to inform her of the failure to obtain credit. The time lag between when the

5

dealership contractually indicated it would inform Williams of its failure to obtain financing and when the dealership actually informed Williams was critical to Judge Holderman's determination sufficient facts were alleged to defeat a motion to dismiss. *Contra Leguillou v. Lynch Ford, Inc.*, No. 99 C 3449, 2000 WL 198796, at *3-4 (N.D.Ill Feb. 14, 2000).

The parties substantially disagree on significant facts surrounding their interactions. For example, the existence of a completed and signed recission agreement is at issue. Defendant alleges Plaintiff signed such an agreement, but cannot produce a copy; Plaintiff denies she signed such a release document. Also, both Plaintiff and Defendant offered affidavits which directly conflict on this crucial point. Similarly, Plaintiff states she signed a blank buyers order and retail installment contract and initially left the dealership without completing a binding agreement; Defendant disputes this statement and argues the opposite is true. Clearly, the parties' factual disputes merit and require discovery. Plaintiff's affidavit sufficiently challenges the existence of a release document, questions the timing and form of disclosures made prior to signing and therefore precludes a motion to dismiss in favor of Defendant. *See Holley v. Gurnee Volkswagen and Oldsmobile, Inc.*, No. 00 C 5316, 2001 WL 243191, at *3 (N.D.Ill. Jan. 4, 2001).

Therefore, this court cannot say under this set of facts, if proved, that Defendants's actions and inactions would not be a violation of TILA. At this stage in the proceedings, Plaintiff has adequately put Defendant on notice as to the claim. Accordingly, Defendant's motion to dismiss Count I is denied.

### Count II: Illinois Consumer Fraud and Deceptive Business Practices Act claim

To prove a violation of the ICFA, Plaintiff must allege (1) Defendant engaged in a deceptive act or practice; (2) Defendant intended that Plaintiff rely on that deception; (3) the deception occurred in the course of conduct involving trade or commerce; and (4) the act proximately caused damage. *See Williams*, 1999 WL 787488, at *3 (citing *B. Sanfield, Inc. v. Finlay Fine Jewelry Corp.*, 168 F.3d 967, 970-71 (7th Cir.1999)). Here, Plaintiff's allegations (i.e. Defendant, in the course of trade or commerce, misrepresented it was willing to sell her an automobile at the terms set forth in the retail installment contract and buyers

6

order in violation of ICFA (e.g. Defendant twice stated Plaintiff had obtained financing) and proximately caused damage (e.g. physical damage to Plaintiff's Oldsmobile and late payments and other penalty payments to AmeriCredit)) are sufficient to state a claim. *See Williams,* 1999 WL 787488, at *3; *Rayburn v. Car Credit Center Corp.,* No. 00 C 3361, 2000 WL 1508238, at *3-4 (N.D.Ill Oct. 10, 2000). Accordingly, Defendant's motion to dismiss Count II is denied.

### Count III: common law fraud claim

The Federal Rules of Civil Procedure states "[c]omplaints need not plead law or match facts to every element of a legal theory." *Bennett v. Schmidt,* 153 F.3d 516, 518 (7th Cir.1998). Moreover, a district court cannot require a plaintiff to include in the complaint all allegations and facts that, if proved, would enable the plaintiff to prevail at trial because this amounts to a fact pleading requirement. *Id.* "The courts keep reminding plaintiffs that they don't have to file long complaints, don't have to plead facts, don't have to plead legal theories." *Kirksey v. R .J. Reynolds Tobacco Co.,* 168 F.3d 1039, 1041 (7th Cir.1999). Instead, "[a]ll that's required to state a claim in a complaint filed in a federal court is a short statement, in plain (that is, ordinary, nonlegalistic) English, of the legal claim." *Id.* These minimal requirements earlier in the litigation promote the general purpose behind notice pleading in federal court of giving fair notice to defendant of the claims brought against it. *See Vicom, Inc. v. Harbridge Merchant Servs., Inc.,* 20 F.3d 771, 775 (7th Cir.1994).

Here, Defendant received notice that Plaintiff believes Defendant committed a commercial fraud concerning the above TILA-related misconduct. Plaintiff alleges this constituted a willful fraud in violation of Illinois law. 815 ILCS 505/2. This is all that is required at this time under the Federal Rules of Civil Procedure. Viewing all the allegations in the light most favorable to Plaintiff this court cannot say she cannot prove her claim. Therefore, because Plaintiff's complaint comports with all the requirements of the Federal Rules of Civil Procedure and has provided Defendant with adequate notice as to the nature of her common law fraud claim, this court cannot dismiss the complaint under Rule 12(b)(6). Accordingly,

Defendant's motion to dismiss Count III is denied.

**Count IV: Credit Services Organization Act claim**

In Count IV of their amended complaint, Plaintiffs alleges Defendant violated the CSOA by representing to Plaintiff it would provide or assist with obtaining an extension of credit and then failing to provide Plaintiff with the requisite written statement. Defendant argues the CSOA does not apply to car dealerships, and thereby, it cannot be held liable for the alleged violations. On the other hand, Plaintiff maintains the CSOA applies to car dealerships, and thus, Defendant failed to comply with its requirements as a matter of law.

When a federal court applies state law, it should attempt to resolve the issue before it as if it were the highest court of the state that provides the state law. *Stephan v. Rocky Mountain Chocolate Factory, Inc.*, 129 F.3d 414, 416-17 (7th Cir.1997); *Allen v. Transamerica Ins. Co.*, 128 F.3d 462, 466 (7th Cir.1997). Thus, this court must attempt to predict how the Illinois Supreme Court would decide the matter. *Id.* (citing *Smith v. Equitable Life Assurance Soc'y*, 67 F.3d 611, 615 (7th Cir.1995)). However, if an Illinois Appellate Court has ruled on this issue, while not automatically binding, the Illinois court decision may control, "unless there are persuasive indications that the Illinois Supreme Court would decide the issue differently." *Id.; see also Knoblauch v.. DEF Express Corp.*, 86 F.3d 684, 687 (7th Cir.1997) (citing *Commissioner v. Estate of Bosch*, 387 U.S. 456, 465, 87 S.Ct. 1776, 1783 (1967)).

As Defendant has stated, the CSOA is an infrequently used and rarely interpreted cause of action, and this court has little direction from Illinois' highest court and certainly no persuasive guidance. While the Illinois Supreme Court has yet to resolve the issue of whether the CSOA is applicable to car dealerships such as Defendant, that Court will soon provide some guidance, as it recently granted leave to appeal the decision of the Illinois Appellate Court, Third District, in *Midstate Siding & Window Co., Inc. v. Rogers*, 309 Ill.App.3d 610, 722 N.E.2d 1156 (Ill.App.Ct.1999); *Midstate Siding Window Co., Inc. v. Rogers*, 189 Ill.2d 661, 731 N.E.2d 765 (Ill.2000). Therefore, this court must exercise its best judgment to determine how the

8

Illinois Supreme Court will rule on this issue.

The Illinois Appellate Court's decision presents plausible authority to hold Defendant liable under the CSOA, and Judge Guzman similarly found that court's logic persuasive in his motion to dismiss opinion in *Jaffi v. Lynch Ford*, No. 99 C 7852 (N.D.Ill Aug. 25, 2000)(minute order). However, this court is also aware of Judge Holderman's motion for summary judgment ruling in *Fogle v. William Chevrolet/GEO*, No. 99 C 5960, 2000 WL 1129983 (N.D.Ill Aug 9, 2000). Since this is a motion to dismiss and the Illinois Supreme Court presumably will hand down its decision soon, this court will not dismiss this count at this time.

## CONCLUSION

For the foregoing reasons, this Court **DENIES** the Motion to Dismiss (doc. #6).

**IT IS SO ORDERED.**
**DATED:** May 4, 2001

WILLIAM J. HIBBLER, DISTRICT JUDGE